IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 1:12CR038 |
| | ) |
| ALAFAKA PATIENCE OPUIYO, | ) |
| | ) |
| Defendant. | ) |

## STATEMENT OF FACTS

The parties stipulate that the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. From in and around June 2009 through on and about January 25, 2012, in the Eastern District of Virginia and elsewhere, defendant ALAFAKA PATIENCE OPUIYO did unlawfully, knowingly and unlawfully combine, conspire, confederate and agree with Kuraye Tamunoibi Akuiyibo (a/k/a "G," a/k/a Gerald), Otasowie Christopher ASUEN (a/k/a Otas, a/k/a Gene), Nassim Tabatabai (a/k/a Naz), Jennifer Churchill (a/k/a Jennifer Nukul), Kiana Cherrie McKelvin (a/k/a Vicky) and others to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

   (a) to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, prostitution, in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a) (Travel Act), with the intent to promote the carrying on of specified unlawful activity, to wit, prostitution, in violation of Title

18, United States Code, Section 2421 (Mann Act), and interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a) (Travel Act), and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

      (b)     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, prostitution, in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952 (Travel Act), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

      (c)     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, prostitution, in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a) (Travel Act), knowing that the transaction was designed in whole or in part to avoid a transaction reporting requirement under

state or federal law, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii); and

   (d) to knowingly engage, and attempt to engage, in monetary transactions by, through or to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, prostitution in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises in violation of Title 18, United States Code, Section 1952(a) (Travel Act), in violation of Title 18, United States Code, Section 1957(a).

  2. The objects of the money laundering conspiracy were to collect and spend money earned from prostitution in such a way as to avoid detection, seizure and forfeiture by the United States, to conceal the true nature, location, source, ownership and control of the prostitution proceeds, and to avoid reporting requirements.

  3. During the conspiracy, OPUIYO was the "call taker" or "scheduler" who answered the telephones for Classydcescorts.com (hereafter Classy.) OPUIYO scheduled "dates" for the women working as prostitutes for Classy to have sexual relations with various customers ("johns") for money. OPUIYO was responsible for advising the clients of the hourly fees for the Classy prostitutes and confirming whether the "dates" would be "in-call" or "out call."

4. As the "call-taker" or "scheduler," OPUIYO also screened the "johns" to confirm they were not law enforcement by directing them to send her a blank email from their work account or by confirming that they were an existing Classy customer, or a customer from an affiliated prostitution business.

5. After booking the "dates" with the Classy prostitutes, OPUIYO directed the "johns" where and when to meet the prostitutes at area hotels. OPUIYO was responsible for keeping track of which Classy prostitutes were meeting customers at area hotels and how many "dates" they had each day.

6. OPUIYO also calculated the amount of money that the prostitutes owed to Classy each night, as part of their 60/40 percentage split.

7. At the direction of Kuraye Akuiyibo, the owner/operation of Classy, OPUIYO directed the interstate collection of cash proceeds from the prostitutes every night. OPUIYO regularly communicated with Akuiyibo, either electronically or by cellphone, to confirm that she had remitted the prostitution proceeds back to him.

8. At the direction of Akuiyibo, OPUIYO used automated bank teller machines (ATM) and drive-through windows at banks to deposit the cash proceeds of prostitution earned by prostitutes into the bank accounts controlled or managed by Akuiyibo.

9. At the direction of Akuiyibo, OPUIYO transported prostitutes to various hotels in Virginia, Maryland or the District of Columbia where they worked as prostitutes for Classy.

10. On or about July 15, 2011, OPUIYO deposited $1,130 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of Classy.

11. On or about July 22, 2011, OPUIYO traveled in interstate commerce from the Westin Hotel in Vienna, Virginia, to Silver Spring, Maryland, to deposit $3900.25 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of Classy.

12. On or about August 31, 2011, OPUIYO deposited $1,500.00 in cash derived from prostitution into a Bank of America account ending in 2544, held in the name of Akuiyibo, on behalf of Classy.

13. On or about August 31, 2011, OPUIYO deposited $1,000.25 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of Classy.

14. On or about September 6, 2011, OPUIYO deposited $7,400.25 and $2,000.25 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of Classy.

15. On or about September 6, 2011, Akuiyibo sent a text message to OPUIYO's cellphone forwarding his Bank of America account number ending in 2544.

16. On September 6, 2011, OPUIYO deposited $100 in cash derived from prostitution proceeds into a Bank of America account ending in 2544, held in the name of AKUIYIBO, on behalf of Classy.

17. On or about September 7, 2011, OPUIYO deposited $2,700.25 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of Classy.

18. On or about September 7, 2011, OPUIYO deposited $500 in cash derived from prostitution into a Bank of America account ending in 2544, held in the name of Akuiyibo, on behalf of Classy.

19. On or about September 12, 2011, OPUIYO deposited approximately $2,000.35 in cash derived from prostitution into a Bank of America account ending in 8719 held in the name of Boyton, LLC, on behalf of Classy.

20. On or about September 14, 2011, OPUIYO was operating her 2008 Honda Accord when she was stopped by Fairfax County Police for a traffic infraction. Located on the console of OPUIYO'S vehicle was $5,255.00 in U.S. currency, which was proceeds from prostitution that had been collected by OPUIYO earlier that evening. A notebook containing numerous names of prostitutes was also located in OPUIYO'S vehicle.

21. The acts taken by the defendant, ALAFAKA PATIENCE OPUIYO, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that she is obligated

under her plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

> Respectfully submitted,
>
> Neil H. MacBride
> United States Attorney
>
> By: *Kimberly R. Pedersen*
> Kimberly R. Pedersen
> Assistant United States Attorney
> Patricia Haynes
> Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Alafaka Patience Opuiyo, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Alafaka Patience Opuiyo
Defendant

I am Alafaka Patience Opuiyo's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Ronald Hiss
Attorney for Defendant

7