1

```
                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                      ALEXANDRIA DIVISION

UNITED STATES OF AMERICA        .    Criminal No. 1:12cr38-3
                                .
      vs.                       .    Alexandria, Virginia
                                .    May 8, 2012
ALAFAKA PATIENCE OPUIYO,        .    9:30 a.m.
a/k/a Amy, a/k/a Tracy,         .
                                .
              Defendant.        .
                                .
.   .   .   .   .   .   .   .   .   .


                   TRANSCRIPT OF PLEA HEARING
           BEFORE THE HONORABLE LEONIE M. BRINKEMA
                  UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE GOVERNMENT:             KIMBERLY R. PEDERSEN, AUSA
                                PATRICIA M. HAYNES, AUSA
                                United States Attorney's Office
                                2100 Jamieson Avenue
                                Alexandria, VA 22314


FOR THE DEFENDANT:              RONALD L. HISS, ESQ.
                                2020 North Fourteenth Street
                                Suite 510
                                Arlington, VA 22201


OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                U.S. District Court, Fifth Floor
                                401 Courthouse Square
                                Alexandria, VA 22314
                                (703)299-8595



                     (Pages 1 - 34)



        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

P R O C E E D I N G S

1

2                    (Defendant present.)

3          THE CLERK:  Criminal Case 12-38, United States of

4   America v. Alafaka Patience Opuiyo.  Will counsel please note

5   their appearances for the record.

6          MS. PEDERSEN:  Good morning, Your Honor.  Kim

7   Pedersen and Trish Haynes for the United States.

8          THE COURT:  Good morning.

9          MR. HISS:  Good morning, Your Honor.  Ron Hiss on

10  behalf of Ms. Alafaka Opuiyo.

11         THE COURT:  All right.  My understanding is this is

12  coming on for a change of plea, correct?

13         MR. HISS:  That's correct, Your Honor.

14         THE COURT:  All right.  The defendant needs to go to

15  the lectern.  We'll have her placed under an affirmation.

16         Mr. Hiss, you need to be standing next to your

17  client, please.

18         MR. HISS:  I've got a little leg problem, Your Honor.

19         THE COURT:  Oh, you do?  All right, I'll excuse that.

20  Then you may sit.  Go ahead.

21         MR. HISS:  I'm up.

22       ALAFAKA PATIENCE OPUIYO, DEFENDANT, AFFIRMED

23         THE COURT:  All right, you have now taken a promise

24  to tell the truth in answering all of the Court's questions.

25  That means that if you should lie in answering any question,

3

1   the government can prosecute you for a new and separate crime

2   called perjury.  Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  For the record, what is your full name?

5            THE DEFENDANT:  Alafaka Patience Opuiyo.

6            THE COURT:  All right.  And, Ms. Opuiyo, how old are

7   you?

8            THE DEFENDANT:  I'm 32.

9            THE COURT:  How much education have you completed?

10           THE DEFENDANT:  I have my bachelor's degree.

11           THE COURT:  Do you have any problem reading, writing,

12   understanding, or speaking English?

13           THE DEFENDANT:  No.

14           THE COURT:  My understanding is that you are a United

15   States citizen; is that correct?

16           THE DEFENDANT:  Yes, I am.

17           THE COURT:  Are you presently on probation or parole

18   from any other criminal matter?

19           THE DEFENDANT:  No.

20           THE COURT:  Are you at this time under the care of a

21   doctor for any physical or mental condition?

22           THE DEFENDANT:  No.

23           THE COURT:  Within the last 24 hours, have you taken

24   any medication, whether over the counter or by prescription?

25           THE DEFENDANT:  No.

4

1          THE COURT:  Are you at this time under the influence

2    of alcohol or any drugs?

3          THE DEFENDANT:  No.

4          THE COURT:  All right, we have in court this morning

5    a written plea agreement which is 13 pages long, and I see what

6    appears to be your signature, and am I correct the date was

7    April 4 of 2012, so about a month ago?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  All right.  Now, before you signed the

10   plea agreement, did you carefully go over the agreement with

11   Mr. Hiss?

12         THE DEFENDANT:  Yes, I did.

13         THE COURT:  And did you read the plea agreement, all

14   13 pages of it, word for word for yourself?

15         THE DEFENDANT:  Yes, I did.

16         THE COURT:  Approximately how much time did you have

17   to consider the plea agreement before you signed it?  In other

18   words, a day or two? a couple of weeks?  Just a ballpark

19   figure.

20         THE DEFENDANT:  A couple of weeks.

21         THE COURT:  All right.  Now, have you had a chance to

22   ask Mr. Hiss all the questions that you have about this plea

23   agreement?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And has he answered all of your questions

5

1   to your satisfaction?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you have any questions you want to ask

4   me about the plea agreement?

5           THE DEFENDANT:  No.

6           THE COURT:  All right.  Now, do you have a copy of it

7   with you there?

8           THE DEFENDANT:  Yes, I do.

9           THE COURT:  All right.  Turn to page 13, and I want

10  you to look at the two sentences right above the line where

11  your signature appears.  Do you have it?

12          THE DEFENDANT:  I'm just about there.  Okay.

13          THE COURT:  All right.  And those sentences go as

14  follows:  "I have read this plea agreement and carefully

15  reviewed every part of it with my attorney.  I understand this

16  agreement and voluntarily agree to it."

17          Do you see those two sentences?  Right above where

18  your signature would be on page 13.

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  All right.  Are those sentences

21  completely true in every respect?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Now, do you understand that by telling

24  the Court that you've read the entire plea agreement and

25  discussed it thoroughly with counsel and that you understand it

6

1    and are voluntarily agreeing to it, that means you will be

2    bound by everything written in this 13-page document even if I

3    don't go over every paragraph or page of the agreement with you

4    in court today?  Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And the reason for that result is that

7    this written plea agreement is really a written contract

8    between you and the United States government, and when a person

9    signs a written contract after she's carefully reviewed it

10   herself and with counsel and she understands it when she signs

11   it and she signs it voluntarily, then that becomes a binding

12   legal document, and you can't just come into court a few weeks

13   in the future and say, "You know, I thought more about it.  I

14   don't really like what's on page 4.  I want to change it."

15             That's just too late.  Do you understand that?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Now, outside of this 13-page document, do

18   you have any side deals or side understandings with any federal

19   or state law enforcement officials or prosecutors concerning

20   this case?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  Mr. Hiss, is that correct?

23             MR. HISS:  That is correct.

24             THE COURT:  All right.  And, Mr. Hiss, just for the

25   record, were there any other plea agreements or plea offers

7

1     other than the one that's written and in court today that were

2     communicated to you by the U.S. Attorney's Office?

3                 MR. HISS:  No.

4                 THE COURT:  So this was it?

5                 MR. HISS:  This is the one agreement that the United

6     States government and I discussed and negotiated that included

7     my client's participation in, and this is the agreement, the

8     one and only agreement we've had.

9                 THE COURT:  All right.  And so all communications

10    concerning a possible plea were communicated by you to your

11    client?

12                MR. HISS:  Yes, Your Honor.  It was absolutely

13    mutually worked on and participated by with my client.

14                THE COURT:  So Ms. Opuiyo was actually with you when

15    you were talking with the U.S. Attorney?

16                MR. HISS:  Not when she was in the office --

17    actually, I believe only one time was Ms. Opuiyo not with me.

18                THE COURT:  All right.

19                MR. HISS:  And it was a very brief period.  She's

20    been intimately involved in plea negotiations.

21                THE COURT:  All right, that's fine.  Then let's turn

22    to page 1, paragraph 1 of the plea agreement, and there it

23    indicates that the defendant will plead guilty to Count 1 of

24    the pending indictment, which charges her with being a member

25    of a conspiracy to commit money laundering, in violation of

1    Title 19, United States Code, Section 1956(h).

2            Now, do you understand, Ms. Opuiyo, that that is a

3    felony offense that exposes you to a possible maximum term of

4    20 years' imprisonment followed by up to five years of

5    supervised release?  In addition, you could be required to pay

6    a fine of up to $500,000, or twice the value of the property

7    involved in the transaction, whichever number is greater.

8            You could be required to make restitution, although I

9    don't think in this case any restitution is being called for.

10   Is that correct?

11           MS. PEDERSEN:  That is correct, Your Honor.

12           THE COURT:  All right.  And there will be an

13   automatic special assessment of $100.

14           Do you understand the penalties to which you are

15   being exposed with your guilty plea?

16           THE DEFENDANT:  Yes, I do.

17           THE COURT:  All right.  Now, parole is not available

18   in the federal system.  That means whatever term of

19   imprisonment is imposed must be fully served.  Do you

20   understand that?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  When any period of imprisonment has been

23   satisfied, then the supervised release portion of the sentence

24   begins.  When a person is on supervised release, she is under

25   the control of a federal probation officer, and there may be

9

1    requirements to do certain things as well as requirements not

2    to do certain things.

3          I cannot tell you the specific conditions that might

4    apply yet, because I haven't seen the pre-sentence report, but

5    the key fact you need to understand is that if you violate any

6    condition of supervised release, you can be punished by being

7    sent back to prison, and that could be for as long as the

8    period of supervised release, which in this case could be up to

9    five years.

10         Do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Now, when it comes time for sentencing,

13   the Court is going to have to look at two sources of law in

14   determining the appropriate sentence.  First will be the

15   federal sentencing guidelines, and second will be Section

16   3553(a) of Title 18.

17         I assume that you have discussed both guidelines

18   sentencing and sentencing in general with Mr. Hiss.  Have you

19   done that?

20         THE DEFENDANT:  Yes, I have.

21         THE COURT:  All right.  Then in terms of the

22   guidelines, I'm going to assume you understand that the Court

23   needs to make two decisions before your guidelines can be

24   calculated.  First we have to determine your criminal history.

25         Criminal histories are divided into six categories,

1    each category getting a number, so a No. I criminal history

2    will go to somebody who has a very minor record or no record at

3    all, and then as convictions -- and this could include serious

4    traffic violations as well as other types of offenses -- go

5    into the record, the number goes up, with a level VI going to

6    the most serious offenders.

7            Do you understand that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  And then the Court looks at the offense

10   conduct.  Now, every federal crime has a number given to it by

11   the Sentencing Commission, and then depending upon the facts of

12   the case, that number can go up or down, and in your case, and

13   I'm looking at paragraph 4 of the plea agreement, there really

14   are not many specific agreements that have been reached in

15   terms of your sentence, and I think the only one that I see

16   here is towards the end of paragraph 4, this would be on page

17   3, the government has agreed that if you qualify for a

18   two-level reduction to the offense level because of full

19   acceptance of responsibility, the government will ask the Court

20   to award you a third level reduction as long as your offense

21   level is at least a level 16, but in the end of the analysis,

22   the Court will decide both the criminal history and the offense

23   level, and then those two numbers are put on a one-page chart,

24   and that establishes an advisory guideline range.

25            Now, the Court must look at that range and take it

11

1    into consideration, but the Court is not bound by that range

2    and can, in fact, sentence above it or below it.  Do you

3    understand that?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  In addition to the guidelines, the Court

6    must also consider, as I said earlier, the factors in 3553(a),

7    so we're going to look in great detail at your entire

8    background, your work history, your family history, very

9    specifically your role in the overall offense, and other

10   factors, and ultimately, the Court will decide the sentence.

11           Now, you indicated that you've discussed both the

12   guidelines and sentencing with Mr. Hiss.  Is that correct?

13           THE DEFENDANT:  Yes, I have.

14           THE COURT:  And do you understand that no matter what

15   Mr. Hiss may have told you he thinks your guidelines are going

16   to be or what kind of a sentence he thinks you will get or, for

17   that matter, if any of the prosecutors or case agents have

18   talked with you and said, oh, well, you're probably not looking

19   at more than X, or well, your guidelines in this case are going

20   to come out to such-and-such, none of those discussions in any

21   respect limit the probation officer who prepares the

22   pre-sentence investigation or this Court when it goes to

23   sentence you.

24           Do you understand that?

25           THE DEFENDANT:  Yes, Your Honor.

12

1          THE COURT:  And so if at the sentencing hearing the

2    Court uses guidelines that may be different from what you're

3    expecting or hoping for or imposes a sentence on you that is

4    different from what you're expecting or hoping for, that is not

5    a violation of the plea agreement, and it will not give you a

6    basis to withdraw your guilty plea.

7          Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Now, most defendants have the right to

10   appeal both their conviction and the sentence imposed, but if

11   you look at paragraph 5 of your plea agreement, this starts on

12   page 3, the second sentence that begins with the

13   word "nonetheless," as part of this plea agreement, you are

14   giving up -- they use the word "waive," but in the law, the

15   word "waive" means to give something up -- so you are waiving

16   your right to appeal your conviction for the conspiracy and any

17   sentence as long as the sentence is not greater than the

18   maximum allowed by statute.

19          So that means as long as the Court does not sentence

20   you to more than 20 years in prison followed by five years of

21   supervised release and the fine is not more than the greater of

22   $500,000 or twice the value of the property involved in the

23   conspiracy and the special assessment is not greater than $100,

24   you cannot appeal the sentence for any reason.

25          Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Now, in exchange for your guilty plea to

3   Count 1, the government in paragraph 10 of the plea agreement

4   has agreed it will move to dismiss all the other counts pending

5   against you in the indictment, and in paragraph 9 -- this is on

6   page 5 -- paragraph 9, they've agreed that they will not

7   further prosecute you in the Eastern District of Virginia for

8   any of the activities described either in the indictment or the

9   statement of facts.

10          Now, because as I understand the allegations in this

11   case much of the activity occurred in the District of Columbia

12   and elsewhere possibly, you should understand you're still

13   exposed to prosecution in those areas, because only the Eastern

14   District of Virginia is bound by the plea agreement.  Do you

15   understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  Now, you've agreed to

18   forfeiture of certain property as part of this plea agreement,

19   and the forfeiture issues are discussed in paragraphs 15, 16,

20   and 17, but in paragraph 15, among other things, you've agreed

21   to forfeit any interest that you might have in two Honda motor

22   vehicles that are described in paragraph 15 and any other

23   property which the government can trace to the illegal

24   activities involved in the conspiracy.

25          Do you understand that's part of this plea agreement?

14

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  It's also part of the plea agreement that

3    in paragraph 18, you've agreed to file your taxes -- tax

4    returns for the years 2009 through 2011 within 60 days and to

5    pay all taxes that were due for those years.  Do you understand

6    that that's part of your plea agreement?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  All right.  Now, in paragraph 11, I'm

9    going back to page 5, you've agreed to cooperate with the

10   government, and that cooperation is described in some detail in

11   subsections (a) through (g) but includes among other things

12   your testifying truthfully and completely at any trials, grand

13   juries, or other proceedings; your being reasonably available

14   for debriefings and pretrial conferences; and providing

15   documents and any other evidence to the government that it

16   needs.

17             Do you understand that's part of this plea agreement?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And the government in paragraph 12 has

20   agreed it will not use against you either to increase your

21   sentence or to bring a new prosecution any completely truthful

22   information you provide under paragraph 11.  Do you understand

23   that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Now, most defendants who cooperate with

1    the government do so with the hope that the cooperation will

2    result in some benefit with the sentence, and that issue is

3    discussed in paragraph 14 of the plea agreement.  There are two

4    ways in which cooperation can benefit a defendant.  The first

5    would be if the government at or before the sentencing hearing

6    files a motion under 5K1.1 of the guidelines which would

7    basically ask the Court to sentence below the guidelines

8    because of a person's cooperation; and the other way in which

9    cooperation can help is after a person's been sentenced, so now

10   normally the defendant is sitting in prison, and the government

11   files a Rule 35(b) motion which would ask the Court to reduce

12   the sentence that's been imposed because of the defendant's

13   cooperation.

14          And what you need to understand about this plea

15   agreement is that the government has not promised you or

16   guaranteed in any respect that it's going to file either or

17   both of those motions.  Do you understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Because they use the words, "The

20   government reserves the right whether it's going to file either

21   of those motions."  So even if you talked with the agents, even

22   if you've testified in the grand jury or at trial, if the

23   government doesn't feel the testimony was complete or it wasn't

24   of any value and they choose not to file one of these motions,

25   that is not a violation of the plea agreement, and it would not

1    give you a basis to withdraw your guilty plea.

2              Do you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  In addition, the government is not bound

5    by anything in paragraph 14, so even if the government filed

6    one of these motions, if I don't grant the motion, that's not a

7    violation of the plea agreement, and it would not give you a

8    basis to withdraw your motion.  Do you understand that?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Now, have you had enough time to explain

11   to Mr. Hiss everything you know about this case?

12             THE DEFENDANT:  Yes, I have.

13             THE COURT:  Have you discussed with him -- I'm sorry,

14   has he discussed with you the nature of the charge, the

15   evidence that he's been able to get from the government, and

16   explained to you the benefits and the lack of benefits of going

17   to trial versus pleading guilty?  In other words, has he had a

18   full discussion with you about your options in this case?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Are you fully satisfied with the way in

21   which Mr. Hiss has worked for you in this case?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And do you understand you still at this

24   time have a right to continue pleading not guilty to Count 1 of

25   the indictment and to go to trial on that charge?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  And if you did decide to go to trial,

3  then the burden would be on the government to prove you guilty

4  of the offense, of the conspiracy offense in Count 1.  In order

5  for them to do that, they'd specifically have to prove beyond a

6  reasonable doubt each and every one of the elements of the

7  offense.

8    So they first of all have to prove that there was, in

9  fact, the conspiracy as they've described it.  Then they'd have

10  to prove that you knowingly and intentionally and not by an

11  accident or mistake or other innocent reason became involved in

12  the activities of the conspiracy.

13    Do you understand that?

14    THE DEFENDANT:  Yes, Your Honor.

15    THE COURT:  They must show the interstate connection

16  of the activities, because that's one of the elements in this

17  offense.  Do you understand that?

18    THE DEFENDANT:  Yes, Your Honor.

19    THE COURT:  And they have to show, obviously, that at

20  least some activities occurred in the Eastern District of

21  Virginia.  Do you understand that?

22    THE DEFENDANT:  Yes, Your Honor.

23    THE COURT:  Now, among the rights and protections you

24  would have at trial would be the following:  You would, of

25  course, get a chance to see all the government's witnesses and

18

1   evidence and test it through the questions of your lawyer.  Do

2   you understand that?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  You could ask the Court to issue

5   subpoenas that would require the presence in the courthouse of

6   witnesses or physical evidence that you could then use in your

7   defense at trial.  Do you understand that?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  You could testify as a witness.  Do you

10  understand that?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  You could also invoke your Fifth

13  Amendment right against self-incrimination and not testify, and

14  if you made that decision, then the silence, that is, your lack

15  of testimony, could not be used as any evidence of guilt

16  against you.  Do you understand that?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  You would, of course, have the right to

19  the help of a lawyer throughout all your trial stages, and if

20  you could not afford to hire a lawyer yourself, we would make

21  sure you had a lawyer at taxpayers' expense.  Do you understand

22  that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  You've opted for a jury trial, and the

25  jury trial would be conducted by having 12 ordinary citizens

1   who would be basically brought together on a random basis

2   decide the case, but the other option for a trial would be a

3   trial by a judge alone.

4           In either type of trial, whether to a judge or a

5   jury, the same burden is on the government, and that is, you

6   could not be found guilty unless the government proved your

7   guilt beyond a reasonable doubt.  Do you understand that?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And if you continued with not guilty

10  plea, Mr. Hiss could try to attack the prosecution's case.  I

11  don't know whether or not there would be any successful motions

12  he could file, but motions to suppress are sometimes able to

13  keep certain evidence like a confession or a statement out of

14  the case.  There may or may not be issues about multiple

15  conspiracies, whether there's enough connection with interstate

16  commerce.

17          I have no idea what, if any, defenses you might have,

18  but what you need to appreciate is that by pleading guilty,

19  you're giving those defenses up.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And lastly, if you pled not guilty and

22  you went to trial and you were found guilty at trial, you could

23  appeal that finding of guilt to a higher-level court.  Now, do

24  you understand that by being found guilty based on your guilty

25  plea and under the terms of this plea agreement, you are giving

1    up your right to appeal your conviction of a conspiracy count?

2    Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Other than the written plea agreement

5    that's in court today, has anybody promised or suggested to you

6    that by pleading guilty, you would get a lighter sentence or

7    more favorable treatment by the Court?

8            THE DEFENDANT:  No, Your Honor.

9            THE COURT:  Has anyone put any force or pressure on

10   you to plead guilty today?

11           THE DEFENDANT:  No, Your Honor.

12           THE COURT:  All right.  Ms. Opuiyo, the last document

13   we need to go over in connection with your plea is a written

14   statement of facts, which is incorporated in the plea

15   agreement.  Now, I see on page 7 of that statement of facts

16   what appears to be your signature.  Do you remember signing the

17   statement of facts?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  And did you sign it the same day you

20   signed the plea agreement?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  All right.  Now, before you signed the

23   statement, did you read it over word for word?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And do you understand that by signing the

1    statement of facts, you are admitting the truth of everything

2    in the preceding six pages, and you're also admitting that if

3    the case had gone to trial, the government could have proven

4    those facts beyond a reasonable doubt?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  So as I understand it, you do

7    admit that you were part of a conspiracy with other people,

8    including a -- and I'm going to mispronounce some these names,

9    but Kuraye Akuiyibo, also known as "G" or Gerald.  Do you know

10   him?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And Otasowie Christopher Asuen, did you

13   know him?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  And did he also use the names Otas and

16   Gene?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Did you know Nassim Tabatabai?

19           THE DEFENDANT:  I never knew her until the trial.  I

20   never met her prior to the trial.

21           THE COURT:  Trial or the arraignment?

22           THE DEFENDANT:  The arraignment, excuse me.

23           THE COURT:  All right.  How about Jennifer Churchill?

24           THE DEFENDANT:  I never met her until the

25   arraignment.

22

1           THE COURT:  How about Kiana McKelvin?

2           THE DEFENDANT:  Yes, I knew her.

3           THE COURT:  All right.  Was she also known as Vicky?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  All right.  And do you agree that you

6    were part of this organization or conspiracy to violate among

7    other things the Mann Act, that is, to cause persons to travel

8    across state lines to engage in acts of prostitution?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  All right.  And do you agree that you

11   were also involved in conducting interstate financial

12   transactions --

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  -- in connection with that activity?

15          All right.  Now, do you agree that it was part of

16   your job to be a call taker or scheduler?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  All right.  For Classy Escorts -- Classy

19   DC Escorts?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  All right.  And how did you get involved

22   in that?

23          THE DEFENDANT:  It was a few years ago.  I was

24   looking for -- I didn't have a job, and I responded to an ad on

25   craigslist.

23

1          THE COURT:  And the ad was for what?

2          THE DEFENDANT:  It was for escorts, escorting.

3          THE COURT:  All right.  Did you actually at some

4    point do some escorting?

5          THE DEFENDANT:  Not with this agency, no.

6          THE COURT:  All right.  But with Classy DC Escorts,

7    your job was exactly what?

8          THE DEFENDANT:  Was to answer the phones and make

9    appointments.

10          THE COURT:  All right.  And did you understand from

11    the very beginning that when you answered the phones and made

12    appointments, it was to arrange prostitution?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  No question about that?

15          THE DEFENDANT:  No question about it.

16          THE COURT:  All right.  And did you among other

17    things help set up locations?  Did you choose the hotels where

18    people would meet?

19          THE DEFENDANT:  I did not.  I did not do that.

20          THE COURT:  That was given to you?

21          THE DEFENDANT:  Yes.  That information was given to

22    me.

23          THE COURT:  And then you communicated it to whom?

24          THE DEFENDANT:  To the escorts who were working.

25          THE COURT:  And also to the customers?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  All right.  And who would be -- who would

3    give you the hotel information?

4          THE DEFENDANT:  G.

5          THE COURT:  All right.

6          THE DEFENDANT:  The owner.

7          THE COURT:  All right.  And did you also collect cash

8    from some of these transactions?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And how would you -- how would that

11    happen?

12          THE DEFENDANT:  I would go to the hotels and collect

13    money from the escorts.

14          THE COURT:  All right.  Now, when you said you would

15    go to the hotels, where, where were you when you were answering

16    the telephone and doing this?

17          THE DEFENDANT:  I was in my house in Maryland.

18          THE COURT:  So you were in Maryland?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  And then you would travel

21    into the District of Columbia?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Were some of the hotels in Virginia?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And did you sometimes travel into

25

1  Virginia as well?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  All right.  And then when you received

4  the proceeds, did you get the full amount or just the portion

5  that the escort was giving back to the organization?

6          THE DEFENDANT:  A portion.

7          THE COURT:  All right.  And what was the split, if

8  you know it?

9          THE DEFENDANT:  It was 60/40.  They received 60; we

10 received 40 percent.

11         THE COURT:  All right.  Were any records kept of

12 this?

13         THE DEFENDANT:  Yes, there were.

14         THE COURT:  On paper or electronically?

15         THE DEFENDANT:  Both.

16         THE COURT:  All right.  Were you involved in keeping

17 track of any of that paperwork?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  All right.  And did you sometimes also

20 transport escorts to hotels?

21         THE DEFENDANT:  No, I didn't do that.

22         THE COURT:  You never transported anybody?

23         THE DEFENDANT:  No.

24         THE COURT:  Did you cause them to be transported,

25 like calling a cab or something for them?

1            THE DEFENDANT:  Probably, if I remember correctly.

2     It was a while ago.

3            THE COURT:  All right.  It says in paragraph 10 that

4     on July 15, 2011, you deposited $1,130 in cash derived from

5     prostitution into a Bank of America account ending in 8719 that

6     was held in the name of Boyton, LLC, on behalf of Classy.  Is

7     that accurate?

8            THE DEFENDANT:  It probably is.  I don't remember

9     specifically, but it --

10            THE COURT:  How would you know what accounts to use

11     when you were making deposits?

12            THE DEFENDANT:  I had the account numbers.

13            THE COURT:  You had the account numbers?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Was there more than one account?

16            THE DEFENDANT:  There was two.

17            THE COURT:  Two.

18            THE DEFENDANT:  Um-hum.  Well, there were more than

19     two that were used, but there were two that were used

20     frequently.

21            THE COURT:  And how would you know which of the two

22     to use?

23            THE DEFENDANT:  I was instructed by the owner.

24            THE COURT:  And the owner was?

25            THE DEFENDANT:  G.

27

```
1              THE COURT:  And do you agree -- again on page 5,
2    there's a list of dates with specific amounts of money and
3    deposit matters.  Do you agree that all that is accurate?
4              THE DEFENDANT:  Most likely.  It probably is.  I
5    don't remember specifically, you know, the dates, as to the
6    amount that I deposited on those dates, but if the government
7    is able to produce those dates, then it's probably true, but I
8    don't remember specifically on what date that I deposited what
9    amount of money.
10             THE COURT:  On an average week, how many times would
11   you go to the bank to make a deposit?
12             THE DEFENDANT:  Four, five, four to five times a
13   week.
14             THE COURT:  Four to five times a week?
15             THE DEFENDANT:  Yes.
16             THE COURT:  And I would assume -- were the weekends
17   your busier time, or was there really no pattern to the
18   activity?
19             THE DEFENDANT:  There was no pattern.
20             THE COURT:  No pattern, all right.
21             Now, do you agree that on September 14, 2011, you
22   were operating your 2008 Honda Accord when you were stopped by
23   Fairfax County Police for a traffic infraction?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  All right.  And that they found in that
```

28

1  vehicle at the time $5,255 in U.S. currency, which were

2  proceeds from prostitution that you collected earlier that

3  evening, is that correct?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  And did they also retrieve a notebook

6  that had various names of prostitutes from your vehicle?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  All right.  Now, do you understand that

9  if the Court accepts your guilty plea today, there'll be no

10  further trial of the case as to you, and you will be found

11  guilty of Count 1, that is, the conspiracy count?  Do you

12  understand that?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  Do you claim in any respect you're

15  innocent of the conspiracy count?

16            THE DEFENDANT:  No, Your Honor.

17            THE COURT:  How then do you plead?

18            THE DEFENDANT:  I plead guilty.

19            THE COURT:  All right.  Mr. Hiss, have you had enough

20  time to thoroughly go over this guilty plea with your client?

21            MR. HISS:  Your Honor, not only have we had time to

22  go through the guilty plea; we've also had time to go through a

23  vast amount of discovery.

24            THE COURT:  All right.  Are you satisfied that

25  Ms. Opuiyo has entered her plea in a knowing and voluntary

1    fashion?

2              MR. HISS:  I am, Your Honor.

3              THE COURT:  And that her guilty plea fully accords

4    with your understanding of the facts and circumstances?

5              MR. HISS:  It does.

6              THE COURT:  All right.  Then at this point, the Court

7    is satisfied that the defendant has entered her guilty plea in

8    a knowing and voluntary fashion, with the full advice of

9    competent counsel, and that the written statement of facts as

10   well as the oral admissions in court today are more than enough

11   evidence upon which to find the defendant guilty of Count 1 of

12   the indictment, so your plea is accepted, and you're found

13   guilty.

14             The government has submitted a motion to dismiss

15   Counts 2, 3, and 6 of the indictment, and I'm going to enter

16   that order at this time.

17             And we need to set this case for sentencing.  I got a

18   good report from Pretrial Services, so I see no reason to

19   adjust the defendant's bond other than having new appearance

20   dates.  Is there anything the government wants to raise in

21   terms of time?

22             MS. PEDERSEN:  Nothing on behalf of the government,

23   Your Honor.

24             THE COURT:  Yes, Mr. Hiss?

25             MR. HISS:  There's one very minor issue that I had

30

1    discussed with the government just as we were walking in, and

2    it's simply to assist Ms. Opuiyo in her gainful employment.

3    The terms of her pretrial supervision require her to give 24

4    hours' notice of what hours and what location she's going to

5    work.  Recently, she's been asked to stay longer or to cover an

6    employee who comes in late.

7        What we'd ask is that if she is requested by her

8    employer to stay an extra two or three hours to cover a shift

9    or cover an employee who doesn't show up on time, that she be

10   allowed to remain at work until that employee shows up or until

11   her supervisor lets her go.

12       THE COURT:  The employer is aware of these charges?

13       THE DEFENDANT:  They are not aware of that.

14       THE COURT:  You were not required to do that?

15       THE DEFENDANT:  I did not disclose it to them because

16   I wouldn't have gotten the job if I had disclosed to them my

17   current situation.

18       THE COURT:  I'm not sure that the Pretrial Services

19   report indicates -- when did this job start?

20       THE DEFENDANT:  It started two-and-a-half weeks ago.

21       THE COURT:  And Pretrial is aware of your job?

22       THE DEFENDANT:  Yes, they are.  Yes.

23       THE COURT:  Oh, I see.  All right.

24       Well, are you still in school?

25       THE DEFENDANT:  No.  I've never been -- I graduated

31

1    from school years ago.  I was in bartending -- I went to

2    bartending school.

3                THE COURT:  That's what I'm asking.

4                THE DEFENDANT:  Yes.  I've been done -- I was done

5    with that about a month ago.

6                THE COURT:  All right.  And so you're working at a

7    cocktail lounge right now?

8                THE DEFENDANT:  At a restaurant.

9                THE COURT:  At a restaurant?

10               THE DEFENDANT:  Um-hum.  And I work at the cocktail

11   lounge at night, so I have two jobs at the moment.

12               THE COURT:  What's the government's position on that

13   issue?

14               MS. PEDERSEN:  It doesn't seem unreasonable, Your

15   Honor, if she's maintaining employment.  It's just a matter of

16   whether Probation can accommodate that, so I would just ask

17   that if she's required to stay late, that she get some kind of

18   verification from her employer that she can present to

19   Probation upon demand.

20               THE COURT:  All right.  Now, you're on GPS location

21   tracking?

22               THE DEFENDANT:  Yes, Your Honor.

23               THE COURT:  Well, the GPS would indicate that she's

24   still at the restaurant.

25               MS. PEDERSEN:  Yes.  What I understood from

1  Probation, they just want a typical 24-hour notice.  It sounds

2  to me like on occasion, it's impossible to happen.  So on those

3  occasions where 24-hour notice is not required, the government

4  doesn't object to that as long as she can get some verification

5  from her employer that that was the situation which she could

6  notify Probation.

7          THE COURT:  You're supposed to be home by 11 p.m.; is

8  that correct?

9          THE DEFENDANT:  It varies from night to night.  It

10 varies on my schedule.  Some nights I'm out later.  Some nights

11 I'm back home at eleven.  It varies.  My shifts vary.

12         THE COURT:  What's the latest you'd be home if you

13 work the late shift?

14         THE DEFENDANT:  Well, I mean, the job that I work

15 during the day, my hours are 9:30 to 3:30.  Sometimes I'm asked

16 to stay longer.

17         THE COURT:  All right.

18         THE DEFENDANT:  And then at the lounge, my hours

19 start from five to 1 a.m.  So my shift, it varies.

20         THE COURT:  Mr. Arnett, are you here?

21                 (No response.)

22         THE COURT:  We don't have anybody here from Pretrial?

23 All right.

24         I'm not quite sure how I'll word this.  Mr. Hiss, I

25 think the best thing for you to do is since you're in the

33

1    building today, go talk to Mr. Arnett, the pretrial officer.

2    Tell him the Court has no objection nor does the government to

3    a slightly more flexible approach.

4              MR. HISS:  I think that will do it.

5              THE COURT:  All right.  And he may need something in

6    writing, in which case you can write up a quick little motion

7    and a proposed order amending the terms and conditions of

8    supervision.

9              MR. HISS:  May I submit the motion to chambers?

10             THE COURT:  Yeah.  Okay?

11             All right.  Now, we need to set this case for

12   sentencing, and we're into the -- well into the summer at this

13   point.  How is Friday, July 27?  Or we could do it August 3,

14   whatever works better on your calendars.

15             MS. PEDERSEN:  Either day is fine with the

16   government, Your Honor.

17             THE COURT:  All right.  Mr. Hiss?

18             MR. HISS:  What was the other day, Your Honor?

19             THE COURT:  August 3.  Is the 27th a problem for you?

20   We have some flexibility in that range.

21             MR. HISS:  The 27th?  Actually, the 27th is better

22   for me.

23             THE COURT:  All right.  Then that will be at 9:00.

24             All right.  Now, Mr. Hiss, when you leave the

25   courtroom, you need to take your client first of all to

34

1  Pretrial, so -- and discuss this issue with them and let them

2  know that the next reporting date is the 27th of July for

3  sentencing, and then you need to go over to the Probation

4  Office to enroll Ms. Opuiyo in the pre-sentence investigation

5  process.

6          Ms. Opuiyo, I'm orally amending your conditions of

7  release at this point to require two things:  that you reappear

8  in this court on Friday, July 27, at 9:00 for sentencing -- do

9  you understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  And that you cooperate fully with the

12  Probation Office in the preparation of the pre-sentence report.

13  Do you understand that?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  All right.  Then if there's nothing else,

16  you're free to go, all right?

17         MR. HISS:  Thank you, Your Honor.

18                        (Which were all the proceedings

19                         had at this time.)

20

21              CERTIFICATE OF THE REPORTER

22     I certify that the foregoing is a correct transcript of

23  the record of proceedings in the above-entitled matter.

24

25                            _____
                                        /s/
                               Anneliese J. Thomson